# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID F. M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 5:20-cv-01362-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On October 17, 2017, Plaintiff filed an application for supplemental security income, alleging disability beginning September 30, 2017. (Administrative Record ("AR") 22.) His application was denied initially and upon reconsideration. *Id.* A

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

hearing was then held before an Administrative Law Judge ("ALJ") on July 22, 2019. (AR 36.) Plaintiff (who was represented by a non-attorney) and a vocational expert ("VE") testified at the hearing. (AR 38-66.)

On August 13, 2019, the ALJ issued an unfavorable decision finding that Plaintiff suffered from the following medically severe impairments: recurrent deep venous thrombosis and peripheral vascular disease. (AR 25.) The ALJ did not find Plaintiff's medically determinable mental impairments of major depressive disorder, posttraumatic stress disorder, and post-acute amphetamine withdrawal syndrome to be severe. *Id.* The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). (AR 26.) Relying on section 204.00 of the Medical-Vocational Guidelines, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 29-30.) Accordingly, the ALJ found that Plaintiff was not disabled since October 17, 2017 – the date the application was filed. (AR 30.) The Appeals Council denied review (AR 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly considered the medical evidence in assessing Plaintiff's residual functional capacity.
2. Whether the ALJ properly considered Plaintiff's subjective complaints.
3. Whether the ALJ properly considered third-party statements.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court only reverses the Commissioner's decision if its findings are based on legal error or are not supported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). As the Supreme Court notes, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019). Substantial evidence is "more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Where the evidence is susceptible to more than one rationale interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). As such, this Court may not substitute its judgment for that of the Commissioner. *See Jamerson v. Chater*, 112 F.3d 1064, 1065 (9th Cir. 1997). Even when the ALJ commits legal error, the decision will be upheld where that error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.*

## DISCUSSION

**1. Whether the ALJ properly considered the medical evidence in assessing Plaintiff's residual functional capacity.**

Plaintiff contends that the ALJ's decision was not supported by substantial evidence, arguing that the ALJ did not properly consider evidence regarding Plaintiff's mental impairments and lower extremity impairments. (ECF 19 at 3.) In response, the Commissioner argues that the ALJ properly pointed to substantial evidence to support his RFC findings. (ECF 24 at 20.)

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 148 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Step two is considered a "de minimis screening device [used] to dispose of groundless claims." *Webb*, 433 F.3d at 687 (internal citation omitted).

An impairment is "severe" if it "significantly limits [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.921(a). In determining a mental impairment's severity, the ALJ must evaluate the degree of functional limitation in the four areas: (1) understanding, remembering, or applying

3

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation is found to be "mild" in these four areas, the claimant's mental impairments is not "severe." 20 C.F.R. § 404.1520a(d)(1).

After finding at step two that the claimant has a severe impairment (or combination of impairments) that significantly limits his ability to work, an ALJ then moves to step three to determine if claimant's impairments meet or equals the requirements of the Listing of Impairments under 202 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(c)-(d), 416.920(c)-(d). If the impairments do not meet the requirements of the Listings, the ALJ moves to step four of the evaluation process, in which the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

When determining a claimant's residual functional capacity, the Commissioner will look at all the relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(e). *See also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). Such evidence includes any statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations; and descriptions and observations of a claimant's limitations from their impairment(s) provided by the family, neighbors, friends or other persons of claimant's. 20 C.F.R. § 416.945. The ALJ's RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence in the record. *Laborin*, 867 F.3d at 1153.

A. <u>Mental Impairments</u>

Here, at step two, the ALJ found that Plaintiff's medically determinable impairments of major depressive disorder, posttraumatic stress disorder, and post-acute amphetamine withdrawal syndrome were non-severe because they did not

cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (AR 25.)

In making this step-two determination, the ALJ relied on medical assessments conducted between November 27, 2017, through January 23, 2019. During this time, Plaintiff was diagnosed with paranoid schizophrenia, posttraumatic stress disorder, post-acute withdrawal syndrome, and major depressive disorder. (AR 429, 431-433, 441-449, 519-530.) Plaintiff was also reported to have bipolar disorder and was directed to continue taking Elavil. (AR 431-433.) Despite these diagnoses, Plaintiff's mental status was found to be "within normal limits" in areas of behavior, speech, mood, and thought process. (AR 443, 445, 449, 526, 527, 529, 530.) Plaintiff was also reported to have fair insight and judgment. *Id.* On January 23, 2018, Plaintiff reported experiencing daily auditory and visual hallucinations. On February 8, 2018, Plaintiff was recorded as exhibiting withdrawn, agitated behavior; soft, pressured speech; and depressed, anxious, labile mood. (AR 443.) However, there was no evidence of intense psychotherapy or the need for psychiatric hospitalization in any of the assessments. (AR 429, 431-433, 441-449, 519-530.)

The ALJ also relied on the opinion of K. Gregg, M.D. (AR 82.) Dr. Gregg reviewed the medical evidence, including the findings from the two isolated incidents, and concluded that Plaintiff did not have schizophrenia. (AR 80-82.) Rather, Dr. Gregg explained that Plaintiff had no history of mental illness and no mental health treatment until January 2018, when he was diagnosed with acute post withdrawal from methamphetamine. *Id.* Dr. Gregg opined that Plaintiff's psychiatric symptomatology was "nothing but amphetamines effects." *Id.* Dr. Gregg noted that Plaintiff had normal function for his age and education and therefore found Plaintiff's medical impairments to be not severe. *Id.* The ALJ found Dr. Gregg's opinion to be persuasive given that it was consistent with the evidence of record, which documented limited and conservative mental health treatment. (AR 26.)

The ALJ further relied on evidence from the hearing. The ALJ noted that Plaintiff had no difficulty answering questions during the hearing. Plaintiff testified that he attended AA meetings where he had friends and acquaintances for whom he ran errands, which suggested to the ALJ that he could interact with others. (AR 25.) The ALJ also noted that despite Plaintiff's allegations of ongoing psychiatric symptomatology, the notes showed he was able to manage his symptoms with minimal treatment. *Id.* The ALJ stated that these findings supported the decision that Plaintiff had no more than a minimal limitation in being able to do basic mental work activities. *Id.*

Plaintiff contends that the ALJ's reliance on general observations made during the hearing does not support the conclusion that Plaintiff's mental impairments are non-severe. (ECF 19 at 8.) Plaintiff argues that the ALJ did not meaningfully discuss why he determined Plaintiff's ability to concentrate, persist at or maintain a pace, and adapt or manage himself was only mildly limited. *Id.* at 8. Furthermore, Plaintiff contends that the ALJ's reliance on Plaintiff's daily behavior in evaluating his mental impairments was improper. *Id.* at 7. While an ALJ may not use personal observations as the sole basis for discrediting a person's testimony, the ALJ may nonetheless use personal observations in the overall evaluation of the credibility of the claimant's statements. *See Orn v. Astrue*, 495 F.3d 625, 639-40 (9th Cir. 2007). Thus, it was proper for the ALJ to consider Plaintiff's testimony and behavior at the hearing. The ALJ noted that Plaintiff did not have trouble answering questions, and the record supports this observation given that prior mental assessments showed that Plaintiff had fair insight and judgment, and normal thought process. (AR 443, 445, 449, 526, 527, 529, 530.) It was also proper for the ALJ to consider Plaintiff's daily activities in making his determination. In determining the severity of Plaintiff's mental impairments, the ALJ shall consider factors such as "the quality and level of [Plaintiff's] overall functional performance, any episodic limitations, the amount of

supervision or assistance [he] requires, and the settings in which [he] is able to function." 20 C.F.R. § 404.1520a(c)(2).

Plaintiff further contends that the ALJ did not properly consider the record which shows a longstanding history of diagnosed psychiatric symptoms. (ECF 19 at 8). Plaintiff notes that the state agency consultant only reviewed a portion of Plaintiff's medical records, and from those observations, he determined the Plaintiff's psychiatric conditions were "non-severe." *Id.* Plaintiff claims that this opinion is the entire basis for the ALJ's analysis of his mental impairments. *Id.* These arguments by Plaintiff lack merit in at least two respects.

First, the mere diagnosis of post-traumatic stress disorder, post-acute withdrawal-amphetamine syndrome, and major depressive disorder is not sufficient to demonstrate severity at step two of the evaluation process. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability."); *Draiman v. Berryhill*, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (claimant's "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment" at step two). Rather, there must be *findings* that support that the mental impairment is "severe." *See Key*, 754 F.2d at 1550. Plaintiff does not show why the diagnoses he cites necessarily establish a severe impairment, nor does he identify additional limitations that should have been considered by the ALJ in making his determination. In fact, Plaintiff cites to the same parts of the record that the ALJ relied on in making his assessment. Therefore, even if the evidence may be susceptible to more than one rational interpretation, the ALJ's decision must be upheld since it is reasonably supported by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Second, the ALJ did not rely solely on the opinion of State agency consultant K. Gregg, M.D., when determining the severity of Plaintiff's mental impairments. Instead, the ALJ relied on multiple pieces of evidence that showed Plaintiff's

diagnosed impairments to have a minimal limiting effect. (*See* AR 429, 431-433, 441-449, 519-530.) The ALJ then found that Dr. Gregg's opinion was persuasive given its consistency and supportability with the overall medical record. As such, it was proper of the ALJ to rely in part on Dr. Gregg's findings when determining the severity of Plaintiff's mental impairments. *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

In sum, the ALJ's determination regarding Plaintiff's mental impairments is supported by substantial evidence in the record, and the ALJ did not need to consider such non-severe mental impairments in assessing Plaintiff's RFC.

B. Physical Impairments

The ALJ found that Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). (AR 26.) In making this determination, the ALJ considered Plaintiff's treatment records that document a history of deep venous thrombosis ("DVT"). (AR 29.) The medical records indicate that as early as December 24, 2015, Plaintiff was found to have DVT in his left lower extremities. (AR 368.) The records also indicate that Plaintiff took Coumadin for his DVT and, on July 27, 2017, switched to Xarelto. (AR 316, 341, 486, 544.) A venous Doppler study of the left lower extremity performed in July 2017 found a near complete occlusive thrombus in the left lower extremity. (AR 363.)

On September 1, 2017, Plaintiff reported increased leg pain and swelling, and his left leg was noted to be purple in color with superficial sores all over it. (AR 404.) A physical examination found superficial flaking in the left lower extremity, moderate edema, palpable pulses throughout, and normal strength, reflexes, and sensation in the leg. *Id.* The evaluation assessed DVT in the left lower extremity and recommended smoking cessation, wound care, compression socks, and leg elevation. *Id.*

A venous Doppler study performed on September 14, 2017 found resolution of the left lower extremity for DVT, normal flow from the common femoral veins to the mid tibial and peroneal regions bilaterally, normal augmentation, and normal compression of all visualized veins. (AR 371.) Subsequent findings on October 27, 2017 noted that there was no evidence of any open wounds to the bilateral lower extremities. (AR 407.)

On November 27, 2017, Plaintiff received a medical assessment for his reported history of DVT in his left lower extremity. (AR 431.) The assessment identified DVT that was stable on Xarelto. (AR 432.) On January 15, 2018, Plaintiff reported feeling well with minor complaints, having a good energy level, and sleeping well. (AR 428.) Plaintiff also reported having a persistent red, lacy rash on both legs despite moisturizing with prescribed steroid creams. *Id.* The findings in the assessment were generally unremarkable with a referral to a dermatologist for the red lacy appearance on both legs as well as a referral a vascular surgeon for a second opinion regarding DVT. (AR 429.)

The ALJ considered the prior opinion of M. Yee, M.D., and found it persuasive. (AR 83-84.) The ALJ noted Dr. Yee concluded that Plaintiff capable of light exertion work which was consistent with the record that documented minimal medical treatment since the alleged onset date. (AR 30.) The ALJ also looked at the opinion of E. Steinspair, M.D., who concluded that Plaintiff's impairments were not severe. (AR 67-73.) The ALJ found Dr. Steinspair's conclusions unpersuasive since they were not consistent with the record, which documents a long history of DVT and peripheral vascular disease. (AR 30.)

Plaintiff contends that the medical opinion of Dr. Yee forms the entire basis of the ALJ's assessment of Plaintiff's residual functional capacity. (ECF 19 at 4.) From this, Plaintiff argues that the ALJ did not give appropriate weight to Plaintiff's ongoing symptoms and necessary treatment for those symptoms. *Id.* at 7. The opinions of a non-treating physician may serve as substantial evidence when the

opinions are consistent with other evidence in the record. *Thomas*, 278 F.3d at 957. Here, The ALJ appropriately considered the persuasiveness of Dr. Yee's medical opinion. Dr. Yee found that Plaintiff was limited to light exertion work, which was consistent with the evidence of record. (AR 29.) Further, Dr. Yee's opinion was supported by evidence of record that showed there was no evidence of treatment after January 2018 and that, from the alleged onset date, documented resolution of Plaintiff's DVT. (*Id.*) Plaintiff's argument that the evidence supports a finding of disability is not sufficient to establish an error in the ALJ's decision. *See Jamerson v. Chater* 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). As discussed in the ALJ's decision and herein, the ALJ pointed to substantial evidence to support the finding that Plaintiff is not disabled.

Plaintiff also contends that the ALJ erred in not giving specific and legitimate reasons for rejecting the medical opinions of Plaintiff's treating physician, William D. Suval, M.D. (ECF 19 at 5.) In raising this argument, Plaintiff cites *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996), in which the Ninth Circuit notes that an ALJ may not reject treating physicians' opinions unless he "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Precedent in this Circuit has further held that more weight should be given to the opinion of a treating physician, and where the treating physician's opinion has been rejected, the ALJ must give "specific and legitimate" reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, the current regulations provide that for claims filed on or after March 27, 2017, the Commissioner will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from [Plaintiff's] medical sources. 20 C.F.R. § 416.920c(a). Since

Plaintiff's claim was filed on October 17, 2017, his claim is evaluated under these regulations.

Some district courts have continued to apply the "specific and legitimate" standard as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit evaluates the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide "clear and convincing" or "specific and legitimate reasons" in the analysis of medical opinions. *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (quoting *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). The Court is mindful that it must defer to the new regulations, even when they conflict with judicial precedent. *See Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021). Nevertheless, it is not necessary to resolve the impact of the new regulations in this case because the ALJ did not reject Dr. Suval's medical findings. Rather, the ALJ specifically incorporated Dr. Suval's findings into the determination of Plaintiff's RFC and did not reject those findings. (*See* AR 28-29, 404-407.) As noted above, pointing to areas of the record that would support a finding of disability does not show that the ALJ erred in making his determination. *See Jamerson*, 112 F.3d at 1067.

**2. Whether the ALJ properly considered Plaintiff's subjective complaints.**

Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective complaints in determining his RFC. (ECF 19 at 10.) In assessing a claimant's testimony regarding subjective symptoms or pain, the ALJ must first determine if there is medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Molina*, 674 F.3d at 1112. If the claimant provides this evidence and there is no

evidence of malingering, the ALJ must then give "specific, clear, and convincing reasons" to reject the claimant's testimony. *Treichler*, 775 F.3d at 1102. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). When assessing a claimant's subjective symptoms claims, an ALJ may consider ordinary techniques of credibility evaluation. General findings are insufficient. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

As summarized by the ALJ, Plaintiff alleged that he is unable to work full time due to pain, blood clots, and sores over his legs. (AR 27, 228, 249, 256.) Plaintiff testified that, since his alleged onset date, he has worked 8 to 12 hours a month running errands for others. (AR 46.) Plaintiff claimed having difficulty standing and sitting due to the sores on his leg. (AR 43-44.) As a result of the pain and swelling in his legs, he could only be on his feet for a maximum of 90 minutes at time and be seated for about an hour at a time. (AR 53-54.) Plaintiff also testified that sitting made his leg sores worse and that he would usually elevate his legs for about 63 percent of the day. (AR 44-45.) Plaintiff denied receiving active treatment for his legs because he was told there was nothing else that could be done due to the chronic nature of his condition. (AR 45.) Plaintiff described his daily activities at the hearing and in his functional report as including going out alone, driving, shopping, and running errands for others. (AR 46, 49, 229-232, 252-253.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (AR 28.) The ALJ first noted that the objective medical evidence was inconsistent with Plaintiff's subjective complaints. Though an ALJ may not reject a claimant's subjective complaints solely based on a lack of medical evidence, it is

nonetheless a factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Contrary to Plaintiff's contention, the ALJ pointed to specific evidence in the record. In particular, the ALJ noted that since the application date, Plaintiff's DVT has since been resolved. (AR 27; *see* AR 371.) Furthermore, despite Plaintiff's alleged recurring leg sores, there was minimal objective evidence to corroborate this allegation. (AR 27.) As such, the ALJ did not err by relying in part on a lack of objective medical evidence in rejecting the severity of Plaintiff's complaints.

As a second reason for discounting Plaintiff's subjective symptom and pain allegations, the ALJ found that the record reflected only minimal and conservative treatment since Plaintiff's application date. (AR 27.) Evidence of conservative treatment is sufficient basis on which to discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ noted that Plaintiff's treatment was limited to compression stockings, leg elevation, anticoagulation medication, steroid cream, smoking cessation, and a referral to wound care. (AR 28, 405, 432.) The ALJ also relied on Dr. Yee's observation that there was no evidence of treatment after January 2018. (AR 29.) In addition, Plaintiff has generally not been prescribed to receive pain medication, despite claims of severe and debilitating symptomology in his function report. (AR 228, 231, 233, 235, 236.) Instead, Plaintiff has on multiple occasions denied any rest pain or claudication in the affected areas during his medical assessments. (AR 396, 407.) Moreover, Plaintiff has not been compliant with recommendations from prior medical assessments to quit smoking, and he has been documented to be non-compliant with his anticoagulant medication. (AR 400.) In sum, there is substantial evidence in the record to support the ALJ's finding that Plaintiff received only minimal and conservative treatment for his DVT, including that Plaintiff did not fully comply with his prescribed course of treatment. That is a specific, clear, and convincing reason to discount Plaintiff's subjective complaints.

Finally, the ALJ cited to Plaintiff's daily activities as a reason for discounting Plaintiff's subjective complaints. If a claimant engages in daily activities that invoke skills that could be transferred to the workplace, an ALJ may discredit the claimant's allegations with specific findings relating to those activities. *See Burch*, 400 F.3d at 681. However, the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ noted that Plaintiff engaged in a number of daily activities such as going out alone, driving, shopping, and running errands and concluded that these activities reflect a somewhat normal level of daily activity and interaction – despite his claimed impairments. (AR 27.) While Plaintiff admitted to engaging in these activities, their frequency and duration was limited in time, after which Plaintiff would be required to rest and elevate his leg. (AR 221-223.) It appears the ALJ did not take in account the frequency and duration of Plaintiff's daily activities when concluding that they were indicative of normal activity. Furthermore, the ALJ did not specifically show what skills from Plaintiff's daily activities could be transferred to the workplace, but rather made a general statement that "the physical and mental capabilities requisite to performing many of the tasks described above ... replicate[d] those necessary for obtaining and maintaining employment." (AR 27.) Nevertheless, the Court finds that any error with regard to Plaintiff's daily activities is harmless because the ALJ provided other legal sufficient reasons for rejecting Plaintiff's subjective testimony, as discussed above. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record).

**3. Whether the ALJ properly considered third-party statements.**

Plaintiff contends that the ALJ erred by not relying on the third-party statements of Marlene Clark when assessing the severity of Plaintiff's impairments, symptoms, and resulting limitations for his RFC assessment. (ECF 19 at 10.) In determining a claimant's RFC, the ALJ shall consider all relevant evidence, including

observations of [the claimant's] limitations from their impairments provided by family, neighbors, friends, or other persons. 20 C.F.R. § 416.945(a)(3). Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ shall take into account. *See Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). An ALJ may not disregard a competent lay witness's testimony without giving reasons that are germane to each witness. *Id.* (citation omitted).

In the present case, the ALJ considered a third-party function report completed by Ms. Clark. The ALJ noted that the statements in the report were of the same subjective nature as the complaints in Plaintiff's testimony. (AR 27.) Ms. Clark stated that Plaintiff was unable to work full time due to the pain and swelling from the blood clots in his leg. (AR 220.) In her report, however, Ms. Clark also stated that Plaintiff was able to help friends with light housekeeping tasks and would engage in social activities such as attending weekly AA meetings, playing cards, and watching television. (AR 221, 223.) In addition, Ms. Clark wrote a letter in which she stated that Plaintiff was paranoid and angry and had memory issues. (AR 27, 531-532.) She also wrote that Plaintiff's leg sores took months to heal, but Plaintiff refused to go to the doctor for this condition.

Plaintiff argues that since the ALJ stated Ms. Clark's statements were not supported by evidence of record, the ALJ apparently gave no weight to her statements. *Id.* While the step-two discussion did not include reasons for not relying on Ms. Clark's third-party statements, the ALJ did address Ms. Clark's statements in his step-four analysis. There, the ALJ determined that Ms. Clark's statements – including her observations of Plaintiff's paranoia, anger, and memory problems – were not entirely supported by evidence of record. (AR 27-28.) *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination. . . .") (internal quotation marks omitted). Inconsistency with medical evidence is a germane

reason for discrediting a lay witness' testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). As a result, there was no error in step four, and any error in step two was harmless. Plaintiff also contends that the ALJ erred by not considering Ms. Clark's statements when assessing Plaintiff's RFC. (ECF 19 at 16.) Once again, the ALJ concluded that Ms. Clark's statements were not entirely supported by the record. In making this finding, the ALJ noted that the objective medical record, while documenting a history of DVT, did not reflect treatment for active thrombosis. (AR 28.) Furthermore, Plaintiff's treating vascular doctor indicated a resolution of the DVT. *Id.* Finally, though the record reported some sores over Plaintiff's legs, the ALJ pointed out that there was limited evidence of treatment. *Id.* And again, inconsistency with medical evidence is a germane reason for discrediting the lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *see Lewis*, 236 F.3d at 511. Accordingly, the ALJ did not err in discounting Ms. Clark's statements.

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 6/25/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE